```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TRICIA K. GOODE,**

    **Plaintiff,**

**v.**                    **CIVIL ACTION NO. 1:06CV113**
                                **(Judge Keeley)**

**MICHAEL ASTRUE,**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

    **Defendant.**

### ORDER ADOPTING MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B), Rule 72(b), Federal Rules of Civil Procedure and Local Court Rule 4.01(d), on July 24, 2006, the Court referred this Social Security action to United States Magistrate James E. Seibert with directions to submit proposed findings of fact and a recommendation for disposition. On June 15, 2007, Magistrate Seibert filed his Report and Recommendation ("R&R") and directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e), Fed. R. Civ. P., to file any written objections within ten (10) days after being served with a copy of the Report and Recommendation.

On June 20, 2007, counsel for the defendant, Commissioner of Social Security objected to Magistrate Judge Seibert's Report and Recommendation. On July 2, 2007, counsel for the plaintiff, Tricia K. Goode ("Goode"), responded to the defendant's objections to the report and recommendation. On July 26, 2007, Magistrate Judge Seibert filed a Corrected Report and Recommendation. Neither the

plaintiff nor the defendant objected to the corrected report which also directed them to file any written objections within ten (10) days after being served with a copy of the R&R. In the corrected report and recommendation, Magistrate Judge Seibert again determined that the record does not contain evidence to substantially support the ALJ's reliance on the "machine tender" position as an example of employment that Goode can perform.

I.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 15, 2001, Tricia K. Goode ("Goode") filed an application for disability insurance benefits ("DIB"), alleging disability since July 24, 1999 due to diabetes, depression, pain in legs, hands and shoulders and neuropathy. The Commissioner denied the claim both initially and on reconsideration. An Administrative Law Judge held a hearing at which Goode, represented by counsel, appeared and testified. A Vocational Expert ("VE") also testified.

On October 23, 2002, the ALJ determined that Goode was not disabled. Goode appealed the decision; however, before the Appeals Council made its ruling on her appeal, Goode again filed for DIB and also filed for Supplemental Security Income ("SSI"). The Commissioner denied both of these applications initially and on reconsideration.

2

**ORDER ADOPTING MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

On February 19, 2003, the Appeals Council determined that Goode had not been able to explain evidence obtained after the administrative hearing and remanded the case for a new hearing. The Appeals Council also consolidated the DIB claims and gave the ALJ the choice of whether to consolidate the SSI claim as well.

On June 11, 2003, an ALJ conducted another hearing. On August 12, 2003, after consolidating all of Goode's claims, the ALJ again determined that Goode was not entitled to DIB or SSI benefits. The Appeals Council denied Goode's request for review, and, on July 24, 2006, Goode filed this action seeking judicial review of the final decision.

II.

**DISCUSSION**

On June 11, 2003, the date of the administrative hearing, Goode was thirty (30) years old and had a high school education and an associate degree in computer science. Her prior work history included employment as a telemarketer, department store customer service clerk, grocery store cashier, data entry clerk and owner and operator of a child care center.

In <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit held that it is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence and limited the court's scope of review to determining whether the

3

record substantially supported the findings of the Secretary and whether the correct law was applied. The Fourth Circuit also held that the reviewing court is not permitted to substitute its judgment for that of the Secretary. Id.

In Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998), the Fourth Circuit held that the court must address whether the ALJ analyzed all of the relevant evidence and sufficiently explained the rationale in crediting certain evidence while conducting the "substantial evidence inquiry." In Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984), our Circuit Court held that it is necessary for the Secretary to "explicitly indicate the weight given to all the relevant evidence" in order for the Court to determine whether the record contains substantial evidence to support the Secretary's findings.

Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), defines substantial evidence as "such relevant evidence as a reasonable mind might accept to support a conclusion." Further, in Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)), the Fourth Circuit held that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

4

a jury verdict were the case before a jury, then there is 'substantial evidence.'"

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 404.1520, the ALJ found that:

1. Goode met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of this decision;

2. Goode had not engaged in substantial gainful activity since the alleged onset of disability;

3. Goode had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations. 20 CFR § 404.1520(b) which do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. While Goode does meet some of the "A" requirements of listing 12.04, she only has mild, moderate mild and none for the "B" requirements. There was no evidence within the record of the existence of "C" requirements;

4. Goode's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision;

5. Goode retained the residual functional capacity for sedentary work with modifications. Employment must allow Goode to sit or stand at will and not expose her to dangerous and moving machinery, unprotected heights, temperature extremes, climbing, walking on uneven terrain, and work is limited to an unskilled position that is an inherently low stress position consisting of one-to-two step, routine, repetitive, entry level tasks that require dealing primarily with things rather than people;

6. Goode was unable to perform any of her past relevant work (20 CFR § 404.1565);

7. Goode is considered a 'younger individual (20 CFR § 404.1563);

8. Goode has more than a 'high school education (20 CFR § 404.1564);

9. Goode had no transferable skills from any past relevant work and or transferability of skills is not an issue in this case (20 CFR § 404.1568);

10. Goode had the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967);

11. Although Goode's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform, including, work as a general office clerk with 299,000 jobs in the national economy and 2,900 jobs in the regional economy; and as a machine tender, with 141,000 jobs in the national economy and 1,400 jobs in the regional economy. The sampling of jobs listed do not have requirements listed in the Dictionary of Occupational Titles (DOT) that contradict the limitations of the claimant; and

12. Goode was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

Magistrate Judge Seibert, after careful and thorough review of the evidence of record, determined that it does not contain substantial evidence to support the ALJ's findings and recommended in both his initial and corrected report and recommendations that

this matter be remanded to the Commissioner for further proceedings.

The Commissioner objected to the initial report and recommendation contending that Magistrate Judge Seibert erred in determining that the vocational expert's ("VE") testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") and that the record does not contain substantial evidence to support the ALJ's finding that Goode can perform "other work" in the economy as a "machine tender".

In <u>Coffman v. Bowen</u>, 829 F.2d 514, 518 (4th Cir. 1987), the Fourth Circuit held that when a claimant shows an inability to resume prior work, the Commissioner bears the burden of demonstrating "that the claimant, considering his age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternate job and that this type of job exists in the national economy." 20 C.F.R. § 404.1566 permits an ALJ to consider VE testimony and the DOT to determine whether there is work in the economy that a claimant can perform based on his or her residual functional capacity.

Social Security Ruling ("SSR") 00-4p provides that VE testimony and the DOT should normally be consistent, and also provides that the ALJ has an affirmative duty to ask the VE about any conflicts regarding his testimony and the DOT. Where a

7

conflict exists, however, neither source automatically prevails. Id. Thus, the ALJ must resolve any conflict and determine whether the VE testimony was reasonable and provide grounds for his reliance on the VE testimony rather than the DOT.

Here, the ALJ asked the VE the following hypothetical questions:

> Q   Would you please describe Ms. Goode's past relevant work?
>
> A   Okay, the work in telemarketing is sedentary exertionally and has a specific vocational preparation of 3. The work at childcare at home is a medium exertional, it has an SVP of 3 also. The work, data entry with Aspen has a sedentary exertional, is at SVP 4. So we're talking about semi-skilled work, Your Honor. The work in the office, clerical work, would be, as a student aid workshop there, is light exertionally customarily and is semi-skilled, SVP 4. customer service is a light exertional and also is semi-skilled and SVP 4.
>
> Q   Okay. Just because Ms. Everhart is out of the room, the hearing reporter, so I just want to make sure I get this. Telemarketer is sedentary, unskilled?
>
> A   No, telemarketer is sedentary, low semi-skilled, SVP 3.
>
> Q   Childcare is also low semi-skilled.
>
> A   That's correct.
>
> Q   SVP of 3, medium. Data entry is sedentary, semi-skilled -
>
> A   And SVP -
>
> Q   - - 4. Office with college is light, semi-skilled, 4. Customer service is light, semi-skilled, 4.
>
> A   That's correct, Your Honor.

8

Q   Okay. Please assume a younger individual with an Associate college degree precluded from performing all but sedentary work with a sit/stand option; no hazards, such as moving dangerous machinery; unprotected heights; no climbing or walking on uneven terrain; work in a controlled environment; and, finally, unskilled, low-stress work. Low-stress defined as one and two-step processes, routine and repetitive tasks, primarily working with things rather than people, entry level. With those limitations can you describe any work this hypothetical individual can perform?

A   Okay, sedentary work, unskilled, SVP 2, as a laminator, Roman numeral I.  We have 75,000 nationally and in the region we have 900.  Sedentary work as a plastic design applier, unskilled with SVP 1, 60,000 nationally, 300 regional.  Sedentary work as a type copy examiner, unskilled and SVP 2, and you have 90,000 nationally, you have 850 regionally.

Q   Are those jobs consistent with the DOT?

A   Yes, they are, Your Honor.

Q   Second hypothetical, Ms. Goode testified that she lies down most of the day, yesterday 5 hours.  If even 2 of those hours, sir, were in the work, 8 to 4:30 format, one hour in the morning and one hour in the evening, if the claimant even had, if her testimony is credible and she lies down even two hours in an eight-hour day are those jobs impacted?

A   Yes, that would prevent her doing full-time work.

Q   Third hypo, the claimant has major depression.  If that affects her concentration to the extent [she] can stay on task one-third to two-thirds of the day, are there any jobs, are those jobs impacted?

A   That would prevent her from doing that type of [INAUDIBLE], yes, Your Honor.

Q   All right.

\*          \*          \*

9

The ALJ asked the VE the following hypothetical at the June 11 hearing:

Q   Would you describe Ms. Goode's past work, please?

A   Yeah, I work with the cashier, bagger, data entry, [INAUDIBLE] and semi-skilled telemarketing, stock [INAUDIBLE] skills, data entry [INAUDIBLE] semi-skilled, telemarketer, sales rep, [INAUDIBLE] and semi-skilled and the childcare probably was skilled [INAUDIBLE].

Q   Okay. Mr. Bell, please, with a high school education and additional college precluded from performing all but sedentary work, with a sit stand option, no hazards, such as machinery and heights, and no temperature extremes, no climbing, no uneven ground, work that is unskilled and low stress, defined as one and two step processes routine and repetitive tasks, primarily working with things rather than people, entry level. With those limitations can you name any jobs a hypothetical individual can perform?

A   Yes, Your Honor, a hypothetical individual could function as a general office clerk sedentary, 299,000 national, [INAUDIBLE] regional [INAUDIBLE] machine tender, sedentary, 141,000 national, 1,400 regional.

Q   Okay. The machine tender doesn't involve moving machinery?

A   It doesn't involve hazardous machinery.

Q   Okay.

A   It's basically reloading, watching a machine do the job and then reloading - -

Q   Okay.

A   - - supplies [INAUDIBLE].

Q   Those jobs consistent with the DOT?

A   Yes.

                \*                \*                \*

Q    Mr. Bell, if the claimant's testimony was taken as credible regarding the need to lie down periodically, periodically throughout the day, even if I downsize that to one hour in the a.m. of the workday and one hour in the p.m. of the workday are those jobs effective?

A    That would eliminate a competitive work schedule, Your Honor.

Q    If the claimant's pain and complications affected her from, other impairments affected her concentration as she alleged, where she could not stay on task one-third to two-thirds of the work day, are those jobs impacted?

A    Yes, Your Honor.

Q    If the claimant had a job that she missed more than two days consistently a month due to a bad day either relative to high blood sugar or low or other complications from her knee or depression would that be a tolerable limit of absenteeism more than two days consistently?

A    [INAUDIBLE]

Q    Okay.

The testimony establishes that the VE indicated the person identified in the hypothetical could perform employment as a general office clerk or machine tender and that those positions were consistent with the DOT. It is also clear that the VE did not identify a specific machine tender position.

Magistrate Judge Seibert determined that the VE's testimony was inconsistent with the DOT because the position of general office clerk, described in DOT listing 219.362-010, requires a

light level of exertion. The hypothetical, however, restricted Goode to sedentary work. Therefore, because the general office position requires a light level of exertion, the VE's testimony is inconsistent with the DOT listing regarding the general office clerk position.

As noted above, SSR 00-4p requires that the ALJ obtain testimony from the VE to explain any discrepancy. Here, the ALJ failed to recognize that a discrepancy existed and, therefore, failed to obtain the necessary clarification from the VE. Accordingly, Magistrate Judge Seibert correctly determined that the record does not contain substantial evidence to support the ALJ's reliance on the position of general office clerk as identified by the VE.

Next, in his corrected report and recommendation, Magistrate Judge Seibert noted that the DOT has many different types of positions listed as "machine tender."  In fact, there are 230 instances where a machine tender position is listed in the index of the DOT.

The Commissioner concedes that the occupation of general office clerk conflicts with the DOT listing because the DOT classified that occupation as requiring "light" rather than "sedentary" exertion, but maintains that the DOT contains several "machine tender" occupations which Goode's residual functional

capacity would permit her to perform. The Commissioner offers two examples of machine tender positions from the 230 listed in the DOT that, assuming Goode's residual functional capacity is correct, she could perform.

Specifically, the Commissioner relies on the machine tender occupations of "Umbrella Tipper Machine" (DOT # 739.685-054) and "Carding-Machine Operator" (DOT #681.685-030) and maintains that each requires only sedentary exertion, a SVP level of two, and a GED reasoning level of one. The record, however, contains no specific reference to either of these listings. In fact, the record does not reflect a reference to any specific machine tender listing, but merely indicates that the VE testified Goode could perform a "machine tender" position.

Significantly, in her response to the Commissioner's objections, Goode points out that SSR 96-9p requires that "the Adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the county" where a claimant is limited to less than a full range of sedentary work. Here, the record not only fails to refer to a specific machine tender position but also fails to provide the number of specific machine tender positions in the

13

national and regional economy for any specific machine tender position including the two the Commissioner relies on.

Moreover, in <u>Bill Branch Coal Corp. v. Sparks</u>, 213 F.3d 186, 191 (4th Cir. 2000), the Fourth Circuit held:

> When ALJs simply state that they have 'considered' certain evidence and have decided to discount it, the Board and reviewing courts are left to guess at the judges' rationale. Indeed, the Board undertook such guesswork when it sought to supply Judge Bonfanti's reasoning for him. Perhaps, the Board guessed correctly that the ALJ considered the pathologists 'better qualified to interpret the autopsy evidence and slides,' and thus, gave greater weight to the pathologists; opinions, but we cannot tell from the ALJ's decision. We decline to continue this guessing game and ask the ALJ assigned to this case on remand to better explain her rationale so that we are not left in the difficult position of attempting to review her factual findings without any understanding of how she reached them.

Accordingly, Magistrate Judge Seibert correctly determined that the record does not contain substantial evidence to support the ALJ's reliance on the machine tender position and the Court agrees.

III.

**CONCLUSION**

Upon examination of the objections to the initial report and recommendation and the response filed by counsel for the plaintiff, the Court finds that the Commissioner has not raised any issues that were not thoroughly considered by Magistrate Judge Seibert in his report and recommendation. Moreover, the Court, upon an independent de novo consideration of all matters now before it, is of the opinion that the Corrected Report and Recommendation accurately reflects the law applicable to the facts and circumstances in this action. Therefore, it is

**ORDERED** That Magistrate Judge Seibert's Corrected Report and Recommendation be accepted in whole and that this civil action be disposed of in accordance with the recommendation of the Magistrate Judge. Accordingly,

1. The defendant's motion for Summary Judgment (Docket No. 16) is **DENIED**;
2. The plaintiff's motion for Summary Judgment (Docket No. 14) is **GRANTED-IN-PART**;
3. This case is **REMANDED** to the Commissioner for further consideration in accordance with the recommendations contained in the report and recommendation; and

4.   This civil action is **DISMISSED WITH PREJUDICE** and **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order. Fed.R.Civ.P. 58.

The Clerk of the Court is directed to transmit copies of this Order to counsel of record.

DATED: July 31, 2007

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE